UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


DAVID K. LAMB,

            Plaintiff,

v.                                              Case No. 2:14-cv-218
                                                HON. GORDON J. QUIST
SUSAN WILSON, et al.,

            Defendants.
_____/


<u>REPORT AND RECOMMENDATION</u>

        Plaintiff David K. Lamb, an inmate currently confined at the Oaks Correctional

Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Nurse

Practitioner Susan Wilson, Nurse Practitioner Matthew Shullick, Health Unit Manager Melissa

LaPlaunt,  and Corizon Health, Inc.

        Plaintiff alleges that he suffers with spinal nerve damage that has caused him pain for

the last seven years.  Plaintiff is wheel chair bound, can barely get out of bed, has numbness and loss

of sensation in his legs and feet, as well as other symptoms associated with his condition.  Plaintiff

alleges that he is incontinent of bladder and bowel.  Plaintiff states that his bowel movements are

painful so he is afraid to eat and has lost over 65 pounds.  Plaintiff asserts that defendants have been

deliberately indifferent to his medical needs for over seven years.  Plaintiff complains that he has

never been diagnosed by a doctor who worked for the MDOC, and has never seen a doctor from any

local hospital.  Plaintiff alleges that defendants have simply prescribed pills and have never informed

him that he has a herniated disc.

Plaintiff alleges that he first experienced back paralysis in 2007, while confined at the Riverside Correctional Facility.  Plaintiff could not get out of bed and could not walk.  Plaintiff was examined by Dr. Pragna Pendya who never diagnosed the cause of Plaintiff's paralysis.  Plaintiff continued to experience the back pain into 2011.    On August 24, 2011, while confined in the Newberry Correctional Facility, Plaintiff experienced excruciating pain in his lower back, and lost complete control.  He was taken to Health Care in a wheel chair by nurse Freytage.  Nurse Freytage told Plaintiff that he suffered with a herniated disc.  Plaintiff was given Ibuprofen and placed on call out to see a doctor.  When Plaintiff arrived in Health Care the next day, instead of seeing a  doctor, he was seen by Defendant Nurse Practitioner Matthew Shullick  who failed to determine the cause of pain in Plaintiff's spine.

On September 12, 2011, Plaintiff collapsed to the floor while attempting to get out of bed.  Plaintiff urinated on himself, needed help to change his clothes, to get showered and to change his bedding.  Plaintiff made a request for an MRI for his herniated disc.  However, Plaintiff was seen by Defendant Shullick who prescribed Prednisone and Naproxen.

Plaintiff was transferred to the Chippewa Correctional Facility on February 7, 2012.  Plaintiff made numerous requests for an MRI or CT scan.  Plaintiff was examined by nurse Michael Brown, who ordered a medical detail for a "lay in with meals in" and "bed rest."  On March 9, 2013, nurse Theresa Merling instructed Plaintiff to stretch and refrain from strenuous lifting.  Plaintiff saw nurses on February 19, 2013, April 16, 2013, and June 4, 2013, due to his history of a herniated disc.  Plaintiff received pain medication and a hot water bottle.   Plaintiff was seen by Defendant Nurse Practitioner Wilson who prescribed Prednisone and Naproxen.  During 2014, Plaintiff urinated on himself once or twice per week while attempting to get out of bed in the morning.  Plaintiff alleges

that despite his complaints he was never examined by a doctor or referred to a doctor by any of the Defendants.

On August 6, 2014, Plaintiff was examined in his cell by nurse Covert, who immediately scheduled Plaintiff to see Defendant Wilson. Defendant Wilson prescribed a fifteen day supply of Prednisone. Plaintiff continued to urinate on himself, which should have been an indication that the Prednisone was not working. Plaintiff claims that it should have been obvious to Defendant Wilson that Plaintiff needed to see a spine and back specialist.

On September 25, 2013, Plaintiff submitted another health care request form to Defendant Health Care Manager Melissa LaPlaunt requesting an MRI and CT scan. The request was denied by nurse Covert, who informed Plaintiff that Defendant LaPlaunt did not have authorization to make an appointment for Plaintiff for an MRI or CT scan. Plaintiff alleges that prison Policy Directive 03.04.100(B) authorizes both Defendant Wilson and Defendant LaPlaunt, who are qualified health professionals, to send him to a local hospital.

Plaintiff alleges that he has difficulty passing stool, and may go an entire week without making a bowel movement. When he does make a bowel movement, he experiences the worst back pain imaginable. Plaintiff indicates that the pain is so unbearable he fears bowel movements. As a result, he refuses to eat as much. Plaintiff states that he lost 65 pounds going from 305 pounds down to 242 pounds. Further, Plaintiff is unable to sleep through the night without waking with horrible back pain that brings tears to his eyes. Plaintiff has no control of his urination.

Plaintiff asserts that he walks with a limp and is in constant pain. Plaintiff experiences muscle spasms and his legs and feet go numb followed by tingling. Plaintiff's symptoms worsen when he lays down. Plaintiff alleges that his numerous requests for medical care, specifically obtaining outside medical care at a hospital, have been ignored by Defendants. Plaintiff

- 3 -

complains that he has never been diagnosed by a doctor, and has never visited with a doctor from a local hospital.  Plaintiff alleges that none of the Defendants have diagnosed his condition.  Only Nurse Freytage and Nurse Damron informed Plaintiff that he suffers with a herniated disc.

Plaintiff alleges that the only care he has received from Defendants is receipt of pills which have done nothing to resolve his problems over the last seven years.  Plaintiff argues that he is suffering needlessly.  Plaintiff argues that Defendants should have sent him to see a spine and back specialist after seven years of prescribing pills that have failed to resolve his back problems and pain.  Plaintiff asserts that Defendants have instead taken the easy route and have simply continued to prescribe pills, which constitutes deliberately indifferent lack of care in violation of the Eighth Amendment.  Plaintiff alleges that on September 23, 2014, Defendant Wilson told him that he will never be sent for an MRI because it costs $10,000.  Defendant Wilson told Plaintiff that you are just going "to have to live and deal with it."

Plaintiff claims that Defendants' actions violated his rights under the Eighth Amendment to the United States Constitution.  Plaintiff is seeking compensatory and punitive damages, as well as declaratory and injunctive relief.

Presently before the Court are the Motions for Summary Judgment filed by Defendants Wilson, Shullick, and Corizon Health, pursuant to Fed. R. Civ. P. 56. (ECF No. 47), and by Plaintiff (ECF No. 56).  Plaintiff has filed a response (ECF No. 55) to Defendants' motion, Defendants have filed a Plaintiff's Motion for Summary Judgment (ECF No. 63), and the matter is ready for decision.  Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply.  *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

As noted above, Plaintiff claims that he has been suffering from back pain and paralysis since 2007 as a result of a herniated disc. Plaintiff asserts that Defendants have been deliberately indifferent to his medical needs and have failed to provide him with appropriate tests and care for his condition. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment

obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258

- 7 -

F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Plaintiff claims that Defendant Shullick saw him on August 25, 2011, September 12, 2011, and October 4, 2011, for a complaints of excruciating back pain. Plaintiff asserts that Defendant Shullick failed to obtain a CT scan or MRI of his back. Defendant Shullick attests that during the time that he treated Plaintiff, Plaintiff was not confined to a wheelchair and was able to walk. In addition, Plaintiff's back pain was not constant and did not cause bowel and bladder control issues. *See* ECF. No. 47-2, PageID.260. Plaintiff's medical records indicate that Defendant Shullick treated Plaintiff at the Newberry Correctional Facility (NCF) on August 25, 2011, and October 14, 2011. Defendant Shullick recorded that Plaintiff was ambulatory during both visits. Plaintiff was placed on Naprosyn and Prednisone on August 25, 2011, for his complaints of pain. *See* ECF No. 49-1, PageID.283 - 285. Plaintiff's first complaint of back pain was on August 24, 2011, when he was seen by Gary R. Freytag, R.N. *Id.* at PageID.281. During this visit, Nurse Freytag noted no spinal deformity, but observed that Plaintiff walked with a limp. Plaintiff had full range of motion. Plaintiff was instructed to apply heat to his back and to perform stretching exercises and avoid heavy lifting. Plaintiff was also given 24 Motrin 200 mg tablets and was instructed to take them twice a day as needed for pain. *Id.*

On August 25, 2011, Plaintiff told Defendant Shullick that his pain had begun the previous day when he got out of bed, and that he thought it may have arisen as a result of recently

increasing his speed running on the track.  ECF No. 47-2, PageID.261.  Defendant Shullick attests that Plaintiff's symptoms were consistent with low back sprain/strain and "acute-on-chronic" low back pain, a common condition in Plaintiff's age group.  *Id.*  Risk factors for this condition include obesity and physical deconditioning, both of which were exhibited by Plaintiff.  On August 25, 2011, Plaintiff demonstrated no signs or symptoms which indicated a need for x-ray, CT, or MRI, which would have included leg weakness, persistent or worsening loss of sensation in Plaintiff's legs, numbness or tingling in the pelvic area, loss of bowel or bladder control, fevers, chills, or night sweats.  Because of Plaintiff's symptoms, Defendant Shullick prescribed a typical course of treatment for the acute-on-chronic variety of sprain/strain and instructed Plaintiff to continue stretching once his back pain subsided.  *Id.* at PageID. 261 - 262.

On September 12, 2011, Plaintiff kited that he was suffering from continued back pain.  ECF No. 49-1, PageID.286.  On September 14, 2011, Plaintiff was seen by Cathy M. Pope, R.N., who noted that Plaintiff ambulated briskly into health care and was in no apparent distress. *Id.* at PageID.287.  Nurse Pope told Plaintiff that Naprosyn was available at the prison store.  *Id.*

On October 4, 2011, Plaintiff kited that he needed an MRI for a herniated disc.  *Id.* at PageID.288.  Plaintiff was seen by Defendant Shullick on October 14, 2011.  During this visit, Defendant Shullick noted that Plaintiff reported that the prednisone taper had been effective and that his pain was confined to the bilateral lower back with occasional alternating radiation to the rear compartments of both legs.  Plaintiff also reported that his pain was worse after periods of inactivity and that it improved after he warmed his muscles up with movement. Plaintiff indicated that he had not been stretching as instructed on the previous visit.  Plaintiff denied bowel or bladder problems. Defendant Shullick did not show any abnormal curvature of his spine and could bend about half-way at his waist and had some tenderness on both sides of his lower back.  Defendant Shullick noted that

despite Plaintiff's continued low back pain, his radiating or radicular symptoms had improved markedly and there were no new symptoms which indicated a need for x-ray, CT, or MRI.  Based on his examination of Plaintiff, Defendant Shullick ordered a repeat of the prednisone taper to be followed by a course of Naproxen.  Defendant Shullick also ordered a course of treatment with Prilosec for Plaintiff's complaint of gastric distress.  *Id.* at PageID.289 - 291; ECF No.47-2, PageID.262 - 263.

Defendant Shullick saw Plaintiff again on November 15, 2011, during which Plaintiff made no mention of back pain.  ECF 49-1, PageID.292 - 294; ECF No.47-2, PageID.263.  On December 3, 2011, Plaintiff was seen by Physician's Assistant Michael P. Millette, and did not complain of back pain.  ECF 49-1, PageID.295 - 297; ECF No.47-2, PageID.263.  On January 9, 2012, Plaintiff kited health care and claimed to have continuing back pain.  ECF 49-1, PageID.298; ECF No.47-2, PageID.263.  Plaintiff was not seen by health care prior to his transfer from NCF to the Chippewa Correctional Facility (URF) on February 6, 2012.  ECF 49-1, PageID.299 - 300; ECF No.47-2, PageID.263.  After Plaintiff's transfer, he did not have any complaints of back pain until January 25, 2013.  ECF 49-1, PageID.301; ECF No.47-2, PageID.263.

After reviewing the record as it relates to Defendant Shullick, the court concludes that Defendant Shullick treated Plaintiff in accordance with his symptoms.  Plaintiff appeared to be responding positively to treatment and was not displaying any signs of deterioration.  Therefore, it is clear that the treatment provided by Defendant Shullick was not 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell*, 553 F. App'x 602, at 605 (quoting *Alspaugh*, 643 F.3d at 169).  Accordingly, the undersigned recommends that Defendant Shullick be granted summary judgment.

Plaintiff claims that the treatment provided by Defendant Wilson while he was confined at URF violated his rights under the Eighth Amendment.  The medical record shows that after Plaintiff's transfer to URF, he first complained of back pain on January 25, 2013.  ECF No. 49-1, PageID.302.  Plaintiff was seen by a Michael G. Brown, R.N., who instructed Plaintiff on proper stretching technique, gave Plaintiff a back pain booklet and lay-in detail, and told Plaintiff to use warm moist compresses as needed for pain.  *Id.* at PageID.303.  Nurse Brown also saw Plaintiff on January 29, 2013, and noted that Plaintiff ambulated with a steady gait and reported that his pain was better.  Plaintiff denied assessment and vitals, stating that he was fine.  *Id.* at PageID.304.

Plaintiff kited that he was experiencing back pain on February 19, 2013, and was seen on February 20, by Gerald Covert, R.N.  Nurse Covert noted that Plaintiff ambulated with a steady gait, was able to sit and stand with ease, and that he was in no acute distress.  Plaintiff denied any loss of control of bowel or bladder and stated that he was taking Motrin with some relief.  Nurse Covert examined Plaintiff, who was able to get up onto the table and bend at the waist with no apparent distress.  No deformity was observed.  *Id.* at PageID.305 - 308.  On February 22, 2013, Plaintiff was seen by Nurse Practitioner RaeAnn Brand on a referral from Nurse Covert.  Plaintiff informed Brand that he originally hurt his back in 2007, and experienced relief from prednisone and NSAIDs.  Plaintiff was told that he may have a slipped disc and had begun to experience difficulty straightening his back upon arising from bed about every two weeks.  Plaintiff denied any changes in his bowel or bladder and stated that he was not currently in pain.  Back stretching and strengthening exercises were discussed with Plaintiff, but he admitted that he only did the exercises when he was experiencing back symptoms.  Brand ordered an x-ray exam of Plaintiff's lower spine and encouraged Plaintiff to increase stretching and follow his exercise plan.  *Id.* at PageID.309 - 310.

Plaintiff's x-ray results revealed no signs of fracture or dislocation or any other abnormality.  These results were reviewed with Plaintiff on March 7, 2013.  *Id.* at PageID.311 - 314.

Plaintiff was seen by Defendant Wilson on September 5, 2013, for back pain. Plaintiff stated that his pain the previous week was 9 on a 1-10 scale, but was a 5 on the day of the appointment.  Plaintiff reported doing only one stretch for his back and continued to utilize the weight pit.  Defendant Wilson observed that Plaintiff was obese and in no acute distress.  Plaintiff did not have any obvious lumbar spine deformity and was able to heel and toe walk.  Defendant Wilson prescribed a prednisone taper and instructed Plaintiff to stay out of the weight pit and do his back stretches.  ECF No. 49-1, PageID.316 - 317.  On September 27, 2013, Plaintiff kited health services.  However, on October 1, 2013, Plaintiff told Nurse Covert that he was wondering if he could get an MRI.  Plaintiff stated that he did not want to be evaluated by health services at that time. *Id.* at PageID.318 - 319.

Defendant Wilson saw Plaintiff on December 26, 2013, March 26, 2014, and June 12, 2014, for chronic care visits, during which she addressed Plaintiff's hypertension and hyperlipidemia, and his gastroesophageal reflux disease.  Plaintiff did not complain of back pain during these appointments.  *Id.* at PageID.320 - 328.

On August 5, 2014, Plaintiff kited that he was experiencing back pain, as well as bowel and bladder problems.  On August 6, 2014, Plaintiff was seen by Nurse Covert and complained that his back pain had flared up in the past two weeks, with intermittent pain down both his legs.  Plaintiff had been doing his stretching exercises and using over the counter medication and warm compresses with little relief.  Plaintiff's range of motion had decreased and he was unable to do leg lifts or to bring his knees all the way to his chest.  During the appointment, Plaintiff denied losing control of bowels or bladder.  *Id*. at PageID.329 - 331.  Nurse Covert stated:

Nurse Protocol continued-P- Pt declines laying from work to rest back (porter in unit).  Pt informed to continue to rest, stretch [twice a day] and warm compresses to affected area.  Pt states has [over the counter medications] and will continue to use those.  Pt informed to use as directed only.  Will refer to [medical provider].  Pt agrees with plan.

*Id.* at PageID.332.

On August 7, 2014, Defendant Wilson saw Plaintiff for his complaints of back and leg pain.  Plaintiff stated that he had back pain on and off for several years, and was currently experiencing pain at a level of 5 on a scale of 1-10 every day.  Plaintiff stated that he had not been doing his stretching exercises because they did not help.  Plaintiff indicated that the steroid taper the previous autumn had helped some.  Defendant Wilson examined Plaintiff and noted that he was able to walk on his heels and toes, that there were no obvious deformities of his lower spine, and that his knee and ankle reflexes were normal.  Defendant Wilson ordered a prednisone taper and instructed Plaintiff to do his stretches.  *Id.* at PageID.333 - 334; ECF No. 47-3, PageID.269.  Because Plaintiff's kite on August 5, 2014, was his first complaint of back pain in nearly a year, and because there was no indication of new trauma, Defendant Wilson determined that further diagnostic evaluation of Plaintiff's back was not medically necessary.  ECF No. 47-3, PageID.269.

On September 12, 2014, and December 12, 2014, Defendant Wilson saw Plaintiff for chronic care visits and addressed his hypertension, hyperglyceridemia, hyperlipidemia, sinoatrial node dysfunction, peptic ulcer, and esophageal reflux.  ECF No. 49-1, PageID.338 - 339, PageID.344 - 347.  Plaintiff was also seen by health care on September 22, 2014, and September 23, 2014, for a skin lesion.  *Id.* at PageID.340 - 343.  Following Plaintiff's August 7, 2014, appointment with Defendant Wilson, there is no indication in his medical record that he sought further follow-up treatment for his lower back pain.

- 13 -

After reviewing the record as it relates to Defendant Shullick, the court concludes that Defendant Wilson treated Plaintiff in accordance with his symptoms. Defendant Wilson physically examined Plaintiff's back and evaluated Plaintiff through a series of movements to test his range of motion. Based on the examination and Plaintiff's history of relief following treatment with steroids, Defendant Wilson prescribed a prednisone taper. ECF No. 47-3, PageID.270. It is clear that the treatment provided by Defendant Wilson was not no 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x 602, at 605 (quoting *Alspaugh*, 643 F.3d at 169). Therefore, the undersigned recommends that Defendant Wilson be granted summary judgment.

Plaintiff claims that Defendant Corizon, as medical provider, has the duty to send him to a back and nerve specialist and that the failure to do so violates his Eighth Amendment rights. Plaintiff's claim against Defendant Corizon fails because the corporation cannot be liable for its employees actions based upon a theory of respondeat superior or vicarious liability. It is well established that a plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). A plaintiff that sues a private or public corporation for constitutional violations under § 1983 must establish that a policy or custom caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818. The Sixth Circuit has specifically held that like a municipal corporation, a private corporation's "liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). Plaintiff has pleaded no facts showing that the denial of a referral was the result of a policy to deny prisoners medical treatment based upon cost concerns. Thus, because Defendant

Corizon is not liable under a theory of respondeat superior for the individual Defendants' alleged deliberate indifference to Plaintiff's medical needs, I recommend that this claim be dismissed.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to the Motion for Summary Judgment filed by Defendants Wilson, Shullick, and Corizon Health, pursuant to Fed. R. Civ. P. 56. Accordingly, it is recommended that the Motion for Summary Judgment filed by Defendants Wilson, Shullick, and Corizon Health (ECF No. 47) be granted. Finally, the undersigned recommends that Plaintiff's Motion for Summary Judgment (ECF No. 56) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: February 2, 2016                          /s/ TIMOTHY P. GREELEY
                                                 TIMOTHY P. GREELEY
                                                 UNITED STATES MAGISTRATE JUDGE